[No. 18436. Department Two.—August 27, 1895.]

# DOROTHEA SCHWERDTLE, APPELLANT, v. COUNTY OF PLACER ET AL., RESPONDENTS.

108 589
116 595

108 589
141 349

108 589
144 345
144 354

APPEAL—OPINION—RECORD.—The opinion of the judge of the trial court forms no part of the record on appeal from the judgment.

PUBLIC HIGHWAYS—PUBLIC DOMAIN—JUDICIAL NOTICE.—Courts will take judicial notice of section 2477 of the Revised Statutes of the United States, granting the right to lay out public highways over its lands, and of a state statute declaring all roads in use in a particular county public highways, and accepting them as such, but cannot take judicial notice that any particular land at a specified date was a part of the public domain.

ID.—DEDICATION—ADVERSE USER.—In the absence of any statute the common-law rule as to the presumption of a dedication of land as a public highway by adverse user applies in this state.

ID.—CONSENT AND ACQUIESCENCE OF OWNER.—Where a dedication is sought to be established by a use which has continued for a time not long enough to perfect the rights of the public under the rules of prescription, then the actual consent or acquiescence of the owner is essential, since without it no dedication could be proved and none would be presumed; but where this actual consent and acquiescence can be proved, then the length of time of the public use becomes nonessential, because the offer to dedicate and the acceptance by use, both being shown, the rights of the public have immediately vested.

ID.—ADVERSE POSSESSION — PRESUMPTION OF CONSENT. — But where the claim of the public rests upon long-continued adverse use, that use for the period of time for the acquisition of title to land by adverse possession establishes against the owner the conclusive presumption of consent, and so of dedication. It affords the conclusive presumption of knowledge and acquiescence, and, at the same time, negatives the idea of a mere license.

ID.—ERECTION OF GATES—PAYMENT OF TAXES.—The right of the public in a highway is not lost by the act of the owner of the land in placing gates across it, after asking permission so to do of a member of the board of supervisors, nor by the payment by him, for more than five years, of the taxes assessed on the entire tract of land through which the road ran.

APPEAL from a judgment of the Superior Court of Placer County. MATT. F. JOHNSON, Judge.

The facts are stated in the opinion of the court.

*Isaac Joseph*, and *D. E. Alexander*, for Appellant.

*L. L. Chamberlain*, *F. P. Tuttle*, and *A. K. Robinson*, for Respondents.

HENSHAW, J. — Appeal from the judgment alone. Action to quiet title to a strip of land, and to restrain defendant Glines from committing threatened acts of trespass upon the property. The land in dispute is claimed by the county as a public highway, and Glines is one of its road overseers. The defendant county pleaded " that for more than twenty years last past prior to the filing of the complaint that certain piece of road . . . . known as the 'Dotan's Bar and Carrolton road,' as it ran through and across the lands described in plaintiff's complaint, was and is now a public highway, known, recognized, and treated as such by the road officers of Placer county, and duly constituted such in the manner required by law." Upon this somewhat vague averment trial was had, and the court found: "That the plaintiff is the owner in fee, and, as such' owner, was in the possession of said real property for more than five (5) years continuously prior to the commencement of this suit; that during said five years prior to the commencement of this suit, state and county taxes were regularly levied upon all of said real property, all taxes have been paid by plaintiff within said five years; and during all of said time said real property was and now is inclosed by substantial fences; that prior to the erection of said fences by plaintiff the country in the neighborhood of said real property was an open country, and that persons that traveled over it could travel in any direction, and cattle could roam over the entire country at will; that across said property there passes a road known as the Dotan's Bar and Carrolton road; that from the year 1850 down to about the year 1887 the said road was continuously open and notoriously used by the public in general, adversely to the plaintiff, without let or hindrance, as a public highway for all purposes, and was during all of said times entirely open and unobstructed; that in the year 1887 plaintiff asked permission of one of the members of the board of supervisors to place gates across the road at the inlet and outlet of the same, which said permission was granted by said member

without authority of the board; that thereafter, and
for a period of about five years, the public in general
continued to use said road openly and notoriously, and
without let or hindrance, other than the opening and
the closing of said gates; that the said road, from about
the year 1855 to 1887, was the common traveled road in
going from Sacramento and Folsom to Dotan's Bar;
that in the early days stages carrying the United States
mail constantly traveled said road, and at intervals dur-
ing said time the road master of the road district in
which said road is situated performed work and labor
upon the same where the same crosses the property of
plaintiff; that plaintiff and her grantors, for a period of
about twenty years prior to the closing of said gates as
hereinafter found, were in possession and occupancy of
said land, and had full knowledge of the use of said
road by the public as a highway for all purposes, and up
to the time of the said closing of said gates offered no
let or hindrance to the use of said road by the public
as a highway and in no way, manner, or shape, or form
objected to the same."

The court concluded, as matter of law, that the road
was a public highway, and judgment passed accord-
ingly.

The answer is objectionable in averring as a conclu-
sion of law that the land in controversy is a public high-
way. No facts are pleaded, and it cannot be determined
whether the defense rested its claim upon dedication
and acceptance, or upon rights acquired by user under
the rules of prescription.

From the opinion of the trial judge, embodied in the
brief of respondents, it appears that he based his deci-
sion upon the facts that the land until after the year 1870
was part of the public domain, and had been continu-
ously used as a highway since 1850; that in 1866 the
United States granted rights to lay out public highways
over its lands (U. S. Rev. Stats., sec. 2477); that in 1870
the legislature of this state, by an act especially appli-
cable to Placer county, accepted this right by declaring

all roads in that county which had been used as public highways for two years or more before the passage of the act to be public highways (Stats. 1870); that this act operating with the statute of the United States amounted to an acceptance of the grant or offer of dedication of the latter, and established the status of the land in controversy, then public land, as a highway, so that when it passed into private ownership it was taken subject to the easement.

Under the facts above recited the reasoning and conclusion of the court are perfectly sound. (*McRose* v. *Bottyer*, 81 Cal. 125.) The difficulty in adopting them is that we have not the same facts before us. They are not set forth in the findings, and the opinion of the learned judge forms no part of the record. We take judicial notice of the statutes above adverted to, but cannot judicially know, and the findings do not disclose, that the land in controversy was a part of the public domain until 1870.

It is, however, found that the public, from the year 1850 to the year 1887, used the road openly, notoriously, and continuously, and adversely to plaintiff.

In the absence of any statute the common-law rule as to the presumption of dedication by adverse user will apply in this state. (Pol. Code, sec. 4468.) The time of user at common law was not a fixed period. Five years, six years, and twenty years, depending on the varying circumstances, have been severally held sufficient. (Elliott on Roads, 124.) "A dedication may be made by deed or other overt act, or may be presumed from the lapse of time or acquiescence of the party. There is no precise limit of time from which dedication may be presumed. In some cases it has been decided that twenty years were necessary to raise the presumption of dedication, while in others it has been held that a much shorter period was sufficient." (*San Francisco* v. *Scott*, 4 Cal. 114.)

The language of *Hope* v. *Barnett*, 78 Cal. 9, cannot be construed as conflicting with this universally accepted

rule of the common law. This court there says: "Where
the dedication is sought to be established by user as a
highway, it must appear that such user was with the
knowledge of the owner, with his consent or without
objection on his part." In that case the findings showed
a use for only eighteen months or two years. If a dedi-
cation is sought to be established by a use which has
continued a short time—not long enough to perfect the
rights of the public under the rules of prescription—
then truly the actual consent or acquiescence of the
owner is an essential matter, since without it no dedica-
tion could be proved and none would be presumed; but
where this actual consent and acquiescence can be proved,
then the length of time of the public use ceases to be
of any importance, because the offer to dedicate, and
the acceptance by use, both being shown, the rights of
the public have immediately vested.

But where the claim of the public rests upon long-
continued adverse use, that use establishes against the
owner the conclusive presumption of consent, and so of
dedication. It affords the conclusive and indisputable
presumption of knowledge and acquiescence, while at
the same time it negatives the idea of a mere license.

Indeed, some of the courts have insisted that the rule
is broader even than as above stated, while no court or
text-writer has confined it to narrower limits. Thus, in
New York, under a statute declaring that all roads which
have been used as public highways for twenty years or
more shall be deemed public highways (N. Y. Rev.
Stats., sec. 100, p. 521), it has been held that the inten-
tion of the owner is not material, and that such a user
makes it a public highway, though the owner be a luna-
tic, an infant, or married woman, and has no knowl-
edge thereof during the entire time. (*Devenpeck* v.
*Lambert*, 44 Barb. 599.) And the soundness of this view
of the law is not only stoutly supported by the authors of
Elliott on Roads and Streets, pages 123, et seq., but has
received some approval from this court in the case of

*Bolger* v. *Foss*, 65 Cal. 250, and *Freshour* v. *Hihn*, 99 Cal. 443.

These cases, however, were decided, the first under section 2619 of the Political Code, since repealed, and the second under a statute exclusively applicable to Santa Cruz county. Their law is not pertinent to this case, nor do we by this affirm the rule there laid down. It is sufficient here to emphasize the fact that no declaration in *Hope* v. *Barnett*, *supra*, was meant, or can properly be construed to declare a different rule from the one which is above set forth, and which finds abundant, and indeed universal, recognition from the authorities.

Thus: "If the user is permissive or by license, it will not ripen into a prescription." (Washburn on Easements, 4th ed., sec. 5, p. 197.)

In *Beall* v. *Close*, 6 Bush, 680, the court say: "The use of a way by the public for twenty years gives a prescriptive right of a public as well as a similar user does of a private way, and this right, when once established, continues until it is clearly and unmistakably abandoned. . . . . And if the only evidence of a dedication be a public user, with the acquiescence of the owner, a user of the term of twenty years must be proved, or a time corresponding to the period of limitations in the state in which the land lies."

In *Commonwealth* v. *Coupe*, 128 Mass. 63, it is said: "Ways by prescription and ways by dedication rest upon entirely different principles. The first is established upon evidence of user by the public, adverse and continuous, for a period of twenty years or more, from which use arises a presumption of a reservation or grant and the acceptance thereof." (*Jennings* v. *Tisbury*, 5 Gray, 73.)

And: "Such intent [to dedicate] will be presumed against the owner where it appears that the easement in the street or property *has been used and enjoyed by the public* for a period corresponding with the statutory limitation of real actions. But where there is no other evi-

dence against the owner to support the dedication but the *mere fact* of such user, so that the right claimed by the public is purely prescriptive, it is essential to maintain it that the user or enjoyment should be *adverse.*" (Dillon on Municipal Corporations, 4th ed., sec. 637, p. 753.)

Says Thompson (Thompson on Highways, 48): "Where the acts of the owner are not so specific in their nature as clearly to prove his intention that the public should acquire a right of way, they are frequently aided by collateral evidence, and the circumstance of most common occurrence which is considered sufficient to support the claim of the public is the length of time during which they have had the uninterrupted use and enjoyment of the privilege."

"What the original intention of the owner was ceases to be of importance after the lapse of the limitation prescribed by the statute.  Twenty years' use by the public, under claim of right evidenced by use, will give a right to the road or street, . . . . no matter what may have been the owner's intention."    (Elliott on Roads and Streets, 123.)

And Angell (Angell on Highways, sec. 131) quotes the language of Shaw, C. J., in *Reed* v. *Northfield,* 13 Pick. 94: "We think it clear upon principle that public easements, as well as others, may be shown by long and uninterrupted use and enjoyment, upon the conclusive legal presumption that they were at some anterior period laid out and established by competent authority."

Says Kent (3 Kent's Commentaries, *451): " If there be no other evidence of a grant or dedication than the presumption arising from the fact of acquiescence in the free use and enjoyment of the way as a public road, the period of twenty years applied to incorporeal rights would be required as being the usual and analogous period of limitation."

In this enunciation of the rule, framed with his wonted wisdom and conservatism, the learned chancellor was dealing with the common-law period for the acquire-

ment of prescriptive rights. Under our law the statute of limitations for the commencement of actions affecting title to realty, and the period of time for the acquisition of title thereto by adverse possession, or of acquiring a prescriptive right to an easement, has been shortened to five years, which period would, by analogy, be made the time requisite for the acquirement by the public of such right.

The conclusive presumption of dedication arising from long-continued adverse user is distinctly declared in *Huffman* v. *Hall*, 102 Cal. 26.

The rule thus being that the adverse user conclusively establishes the presumption of dedication to the public —as in the case of the individual the prescriptive right establishes the presumption of a grant—the finding of such adverse user for over thirty years is more than sufficient for this purpose, unless, as contended, the other findings are contradictory, or show an abandonment. (Pol. Code, secs. 2619, 2631; Civ. Code, sec. 806; *McRose* v. *Bottyer*, supra.)

The finding in this case differs from that discussed in *Cooper* v. *Monterey County*, 104 Cal. 438. Here the adverse user is expressly set out. There, as was said, the language of the finding did not negative the idea that the use might have been under mere license.

The placing of the gates in 1887 was rather an acknowledgment than a denial of the public right, since permission to erect them was first asked of a member of the board of supervisors.

The payment of taxes was upon the whole tract, which included the strip in dispute, and is thus within the rule of *Smith* v. *San Luis Obispo*, 95 Cal. 463. (See, also, *San Leandro* v. *Le Breton*, 72 Cal. 170, 177.)

The judgment is therefore affirmed.

TEMPLE, J., and McFARLAND, J., concurred.

Hearing in Bank denied.